JOHN F. MURTHA, ESQ.
**Nevada Bar No. 835**
BRENOCH R. WIRTHLIN, ESQ.
**Nevada Bar No. 10282**
WOODBURN AND WEDGE
Sierra Plaza
6100 Neil Road, Ste. 500
Post Office Box 2311
Reno, Nevada 89505
Telephone: 775-688-3000
Facsimile : 775-688-3088

jmurtha@woodburnandwedge.com

Attorneys for Trustee
Angelique L.M. Clark

### UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| In re: | Case No.  BK-08-51131-GWZ |
| | Chapter   7 |
| CETUS MORTGAGE, LTD. | |
| Debtor. | |
| _____/ | |
| ANGELIQUE L.M. CLARK, TRUSTEE, | Adv. No. 10-05073 |
| Plaintiff, | **MOTION TO APPROVE COMPROMISE OF TRUSTEE'S AVOIDANCE CLAIMS PURSUANT TO FRBP 9019** |
| vs. | |
| JOHN L. SIMMONS, Trustee of the John L. Simmons Family Trust | Hearing Date:  03/09/2011<br>Hearing Time:  10:00 a.m.<br>Est. Time    :   10 Minutes<br>Set By        :   Liz Wilder |
| _____/ | |

Trustee Angelique L.M. Clark, by and through her attorneys of record, Woodburn and Wedge, hereby moves this honorable Court for an order approving her compromise of the Estate's fraudulent transfer (11 USC §548) claims against Defendant John L. Simmons, Trustee of the John L. Simmons Family Trust (hereinafter the "Defendant"). This Motion is brought pursuant to the provisions of FRBP 9019 (a).  In support of her Motion the Trustee makes the following report to the Court.

I.

**INTRODUCTION**

1.      Cetus Mortgage, Ltd. ("Cetus") was a Nevada corporation with its principal place of business in Washoe County, Nevada.

2.      Cetus was licensed as a mortgage company by the Mortgage Lending Division of the State of Nevada Department of Business and Industry and was engaged in the business of brokering and servicing loans secured by residential and commercial properties located mostly in Northern Nevada.

3.      Typically, loans brokered by Cetus were funded by investments solicited from third party investors willing to loan funds to Cetus borrowers.  The loans brokered by Cetus were occasionally funded by a single investor, but in most instances loans were funded with monies pooled from groups of investors.

4.      Cetus allowed its Nevada mortgage company license to expire without renewal on June 30, 2008, and in July 2008, the State of Nevada, Department of Business and Industry, Division of Mortgage Lending seized Cetus' assets.

5.      On July 9, 2008, Cetus filed a voluntary petition for relief under Chapter 11

1
2
3
4

of the United States Bankruptcy Code. Clark was appointed Trustee of Cetus' bankruptcy estate. The Chapter 11 proceedings were subsequently converted to proceedings under Chapter 7.

5
6

      6.     Prior to Cetus seeking bankruptcy relief, the Defendant participated in four (4) loans that had been brokered by Cetus between January 2006 and May 2008.

7
8
9
10

      7.     On September 27, 2010, the Trustee filed a First Amended Complaint to Avoid Transfers Pursuant to 11 USC §§ 544 and 548 ("Amended Complaint") against the Defendant in Adversary Proceeding 10-5073 ("Adversary Proceeding").

11
12
13
14
15
16
17

      8.     On November 18, 2010, the Defendant filed a Motion to Dismiss Claims in First Amended Complaint Related to 11 USC § 548(a), seeking to dismiss the claims brought under 11 USC § 548 in the First Amended Complaint for failure to name indispensible parties. Also on November 18, 2010, the Defendant filed a Motion to Dismiss for Failure to State a Claim against Clark, seeking to dismiss the claims brought under § 548 in the First Amended Complaint for failure to state a claim.

18
19
20

      9.     The Trustee and the Defendant have resolved the Trustee's claims asserted against the Defendant in the Adversary Proceeding. A copy of the parties' signed Settlement Agreement is attached hereto as Exhibit 1.

21

## II.

22

## SUMMARY OF THE SETTLEMENT TERMS

23
24
25
26
27
28

This section of the Trustee's Motion contains a brief summary of the terms of the Settlement between the Trustee and the Defendant. The terms of the Settlement Agreement (Exhibit 1) control, and in the event of a discrepancy between the terms of

the Settlement Agreement and this summary, the terms of the Settlement Agreement

shall prevail.  The major terms of the settlement are:

> On or before ten (10) calendar days following the entry of an order by this Court approving the settlement, the Defendant shall pay the Trustee the total sum of Ten Thousand Dollars ($10,000) (the "Cash Consideration") for the benefit of the Cetus Bankruptcy Estate.

> In the event the Defendant fails to pay the Cash Consideration within ten (10) days, then judgment may be entered against the Defendant in the amount of $10,000 plus costs and pre and post-judgment interest as allowed by law. Furthermore, the judgment shall provide that all attorney's fees and costs incurred by the Trustee in the enforcement of the judgment may be added to the judgment and enforced the same as if they were part of the original judgment.

> Upon payment of the Cash Consideration, the Amended Complaint in the Adversary Proceeding shall be dismissed with prejudice.

> Upon payment of the Cash Consideration, the Defendant shall be released from any and all claims the Trustee or the Cetus Bankruptcy Estate may have against it including all claims alleged in the Amended Complaint in the Adversary Proceeding and any claims that could have been asserted in said Amended Complaint.

> Except for any Proofs of Claim the Defendant may have filed in the Bankruptcy case, the Trustee and the Cetus Bankruptcy Estate shall be released from any and all claims the Defendant may have against them, including any claims that could have been asserted in a counterclaim to the Amended Complaint.

> Any Proofs of Claim the Defendant may have filed in the Bankruptcy Case are not affected by the settlement.  If no objections to the Proofs of Claim are filed prior to distribution of the assets of the Cetus Bankruptcy Estate, then the Claims shall be allowed as filed.  If, however, any objections to the Proofs of Claim are filed and sustained, the order of the Bankruptcy Court relating to any such claim objections shall control the allowance or disallowance of the Claims.  The Trustee reserves the right to object to the Proofs of Claim on any grounds other than as set forth in the Amended Complaint in the Adversary Proceeding.

## III.

## POINTS AND AUTHORITIES IN SUPPORT OF THE COMPROMISES

**A.    GENERAL AUTHORITIES.**  A compromise or settlement in a bankruptcy

---

proceeding is a core proceeding pursuant to the "catch-all" provisions of 28 USC § 157(b)(2)(A) ("matters concerning the administration of the estate) or 28 USC § 157(b)(2)(O) ("other proceedings affecting … the adjustment of the debtor-creditor or the equity security holder relationship …"). See, e.g., *In re Charter Co.,* 81 B.R. 90, 93 (M.D.Fla. 1987); *In re Carson,* 82 B.R. 847, 849 (Bankr.S.D.Ohio 1987); *In re Paolino,* 78 B.R. 85, 88 (Bankr. E.D. Pa. 1987) See also, *In re International Distrib. Centers, Inc.,* 103 B.R. 420, 421 (S.D.N.Y. 1989).

FRBP 9019(a) authorizes a debtor-in-possession or trustee, upon court approval, to enter into settlements. The decision whether a settlement should be accepted or rejected lies within the sound discretion of the court. The legal principals that should guide the exercise of the court's discretion in an application for settlement are well established and include the following considerations:

a.    The probability of success in the litigation;

b.    The difficulties, if any, to be encountered in the matter of collection;

c.    The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

d.    The paramount interests of the creditors and a proper deference to their reasonable views in the premises.

*In re A&C Properties,* 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied sub nom. Martin v. Robinson,* 479 U.S. 854 (1986); *In re Blair,* 538 F.2d 849, 851 (9th Cir. 1976); *In re MGS Mktg.,* 111 B.R. 264, 267 (Bankr. 9th Cir. 1990). See also, *In re The General Store of Beverly Hills,* 11 B.R. 539, 541 (Bankr. 9th Cir. 1981) (in ruling on a request to

compromise a dispute, court should consider the expense, benefits, hazards, complexity, the time required to litigate, and whether disallowance of the settlement would result in waste of the estate's assets).

In determining whether to approve a proposed settlement, the bankruptcy court does not substitute its judgment for that of the settlement's proponents. *Bell & Beckwith,* 93 B.R. at 574 (B.Ct.N.D.Ohio 1988). The responsibility of the bankruptcy judge is not to decide the numerous questions of law and fact that may be raised regarding the settlement, but rather to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness. *In re Energy Co-op, Inc.*, 886 F.2d 921 (7th Cir. 1989); *In re Teltronics Servs., Inc.,* 762 F.2d 185, 189 (2nd Cir. 1985); *International Distrib. Centers,* 103 B.R. at 423; *Bell & Beckwith*, supra. at 574-575; *In re Marshall*, 33 B.R. 42, 43 (Bankr.D.Conn. 1983); Thus a mini-trial on the merits of the claims or a bankruptcy judge's independent investigation into the underlying dispute sought to be compromised is not required. *In re Walsh Constr., Inc.*, 669 F.2d 1325, 1328 (9th Cir. 1982); *Blair*, 538 F.2d at 851; *International Distrib. Centers,* 103 B.R. at 423; *In re Carson*, 82 B.R. at 583.

  **B.** **THE A&C FACTORS.** Of course, the four considerations set forth in the *A&C Properties* case are the controlling factors in the Ninth Circuit and in this case an analysis of each of the factors supports approval of the propose settlement.

  **1.** **Probability of Success in the Litigation.** This is the ultimate question that can almost never be answered with certainty. In this case the Trustee feels strongly that she could prevail on her claims against the Defendant, but much of the Trustee's

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

evidence will have to be obtained from the Debtor's books and records and they are not

in the best of condition.    That is not to say the condition of the Debtor's poorly

maintained, and perhaps doctored, books and records would prevent the Trustee from

proving her claims, only that the complexity of the task is magnified because the Trustee

must rely upon the Debtor's books and records.  On the other hand, the Defendant feels

equally confident it could successfully defend itself against the Trustee's claims.  The

Defendant believes it has significant defenses to the claims asserted in the Amended

Complaint based upon the fact the Debtor invested its money in investments that were

not consistent with the Debtor's representations, some of the investments into which the

Defendant's money was placed were poor investments and/or not properly collateralized

(i.e. not collateralized as promised), and the Defendant has taken losses on several of

the investments arranged by the Debtor.  The Defendant believes these offsets will

more than defeat any claim the Trustee may have against it.

16
17
18

    **2.**      **The Difficulty of Collecting a Judgment.**  The Trustee cannot state with

certainty whether collection would or would not be an issue in this case.

19
20
21
22
23
24
25
26
27
28

    **3.**      **The Complexity of the Litigation and the Attendant Expense and**

**Delay.**  This factor tracks the "probability of success" factor to a degree.  While at first

blush the issues presented by the Amended Complaint are not terribly complex (did the

Defendant receive any fraudulent transfers from the Debtor?), in reality the issues in this

case are quite complex.  For example, one of the Trustee's bases for asserting the

fraudulent transfer claims against the Defendant is that the Debtor was operating a

Ponzi scheme and, therefore, payments made by the Debtor to the Defendant

constituted actual, intentional fraudulent transfers that were intended to hinder, delay or defraud its creditors.  Proving the Ponzi scheme will require significant review and analysis of the Debtor's books and records (which are in a poor condition and which may have been doctored to cover-up the Ponzi scheme).  As another example, the Defendant's good faith in accepting the allegedly fraudulent transfers from the Debtor is also at issue.  In fraudulent transfer cases, "good faith" is not simply a matter of whether the Defendant knew or did not know the transfer was fraudulent.  Instead, whether a recipient acted in good faith or not depends on the totality of circumstances and if there is sufficient evidence to support a finding that the recipient should have been on notice of improper conduct on the part of the Debtor, good faith may not exist.  *See, e.g. In re Agriculture Research and Technology Group*, 916 F. 2d 528, 536 (9th Cir. 1990); *In re M&L Business Machine Co., Inc.*, 84 F. 3d 1330, 1338-9 (10th Cir. 1996); and *In re Cohen*, 199 B.R. 709, 719 (9th Cir. BAP 1996).  The issue of the Defendant's good faith could require significant evidence regarding the Defendant's knowledge of the manner in which the Debtor conducted its business and whether the Defendant should have been put on notice that the Debtor's business operations were suspect.

    **4.**    **The Best Interests of the Estate.**  For all of the reasons set forth above, the Trustee believes the proposed settlement is clearly in the best interests of the Estate.  The amount recovered by the Estate is not large, but there can be no doubt that the cost of litigating the Estate's claims against the Defendant would be expensive and time consuming.

**VI.**

1

2

## CONCLUSION

3

4

For all of the reasons set forth above, the Trustee respectfully requests that this Court approve the Trustee's settlement of the Estate's claims against the Defendant as set forth in the Settlement Agreement attached hereto as Exhibit 1.

5

6

DATED this 28th day of January, 2011.

7

8

WOODBURN and WEDGE

9

10

By_____

11

John F. Murtha, Esq.
Attorneys for Trustee
Angelique L.M. Clark

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

# EXHIBIT 1

JOHN F. MURTHA, ESQ.
**Nevada Bar No. 835**
BRENOCH R. WIRTHLIN, ESQ.
**Nevada Bar No. 10282**
WOODBURN AND WEDGE
Sierra Plaza
6100 Neil Road, Ste. 500
Post Office Box 2311
Reno, Nevada  89505
Telephone: 775-688-3000
Facsimile : 775-688-3088

jmurtha@woodburnandwedge.com

Attorneys for Trustee
Angelique L.M. Clark

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

* * *

| | |
|---|---|
| In re:<br><br>CETUS MORTGAGE, LTD.<br><br>Debtor.<br>_____/ | Case No.  BK-08-51131-GWZ<br>Chapter   7 |
| ANGELIQUE L.M. CLARK,<br>TRUSTEE,<br><br>Plaintiff, | Adv. No. 10-05073 |
| vs. | **SETTLEMENT AGREEMENT** |
| JOHN L. SIMMONS, Trustee<br>of the John L. Simmons Family<br>Trust,<br><br>Defendant.<br>_____/ | |

This Settlement Agreement ("Agreement") which is entered into by and between Angelique L. M. Clark ("Clark"), in her capacity as the Trustee of the Chapter 7 Bankruptcy Estate of Cetus Mortgage, Ltd., pending before the United States Bankruptcy Court for the District of Nevada as Case No. 08-51131, and John L. Simmons as Trustee of the John L. Simmons Family Trust ("Simmons") shall become effective upon approval by the United States Bankruptcy Court for the District of Nevada ("Bankruptcy Court") and is based upon the following facts and circumstances:

1.    Cetus Mortgage, Ltd. ("Cetus") was a Nevada corporation with its principal place of business in Washoe County, Nevada.

2.    Cetus was licensed as a mortgage company by the Mortgage Lending Division of the State of Nevada Department of Business and Industry and was engaged in the business of brokering and servicing loans secured by residential and commercial properties located mostly in Northern Nevada.

3.    Typically, loans brokered by Cetus were funded by investments solicited from third party lenders willing to loan funds to Cetus borrowers. The loans brokered by Cetus were occasionally funded by a single lender, but in most instances the loans were funded with monies pooled from a group of lenders.

4.    Cetus allowed its Nevada mortgage company license to expire without renewal on June 30, 2008, and in July 2008, the State of Nevada, Department of Business and Industry, Division of Mortgage Lending seized Cetus' assets.

5.    On July 9, 2008, Cetus filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. Clark was appointed Trustee of Cetus' bankruptcy estate. The Chapter 11 proceedings were subsequently converted to proceedings under Chapter 7.

6.    Prior to Cetus seeking bankruptcy relief, Simmons participated in four (4) loans that had been brokered by Cetus between June 2005 and April 2008.

7.    On September 27, 2010, Clark filed her First Amended Complaint to Avoid Transfers Pursuant to 11 USC §§ 544 and 548 against Simmons in Adversary Proceeding 10-5073 ("Adversary Proceeding"). On November 18, 2010, Simmons filed a Motion to Dismiss Claims in First Amended Complaint Related to 11 USC § 548(a) against Clark, seeking to dismiss the claims brought under 11 USC § 548 in the First Amended Complaint for failure to name indispensible parties. Also on November 18, 2010, Simmons filed a Motion to Dismiss for Failure to State a Claim against Clark, seeking to dismiss the claims brought under § 548 in the First Amended Complaint for failure to state a claim.

8.    The parties have resolved the matters put to issue by the pleadings in the Adversary Proceeding.

NOW, THEREFORE, for good and valuable consideration, Clark and Simmons agree as follows:

## SETTLEMENT TERMS

**A.    Payment to Cetus Estate.**  On or before ten (10) calendar days following the entry of an order by the Bankruptcy Court approving this Agreement, Simmons shall pay Clark the total sum of Ten Thousand Dollars ($10,000) ("Cash Consideration") for the benefit of the Cetus Bankruptcy Estate.

**B.    Entry of Judgment Upon Failure to Pay.**  In the event Simmons fails to pay the Cash Consideration as set forth in Paragraph A, above, then, upon the filing of a declaration by Clark's attorney with this Court in the Adversary Proceeding attesting to the fact the payment was not made when due, then judgment may be entered by the Bankruptcy Court in the Adversary Proceeding against Simmons in the amount of $10,000 plus costs and pre and post-judgment interest as allowed by law.  Furthermore, the judgment shall provide that all attorney's fees and costs incurred by Clark in the enforcement of the judgment may be added to the judgment and enforced the same as if they were part of the original judgment.

**C.    Dismissal of Clark's Complaint in the Adversary Proceeding with Prejudice.**  Upon payment of the Cash Consideration, the First Amended Complaint in the Adversary Proceeding shall be dismissed with prejudice. Clark's attorney shall cooperate with Simmons' attorney in preparing and filing the documentation necessary to effect the dismissal.

**D.    Release of Claims by Bankruptcy Estate.**  Upon payment of the Cash Consideration, Simmons shall be released from any and all claims Clark or the Cetus Bankruptcy Estate may have against Simmons including all claims alleged in the First Amended Complaint in the Adversary Proceeding and any claims that could have been asserted in said First Amended Complaint.

**E.    Release of Claims by Simmons.**  Except for Simmons' Proofs of Claim filed in Cetus' Bankruptcy case (see, Paragraph F, below), upon entry of an order by the Bankruptcy Court approving this Agreement, Clark and the Cetus Bankruptcy Estate shall be released from any and all claims Simmons may have against them, including any claims that could have been asserted in a Counterclaim to the First Amended Complaint.

**F.    Simmons' Proofs of Claim.**  Simmons did not file any Proofs of Claim in the Cetus Bankruptcy.

**G.    Payment of Costs and Fees.**  Except as provided in Paragraph B, above, each party shall pay his/her/its own attorney's fees and costs incurred in the Adversary Proceeding and in connection with the negotiation and drafting of this Agreement without recourse against any other party hereto.

**H.    Further Assurances.**  The parties agree to execute and deliver any and all further documents necessary to evidence and consummate the settlement and results contemplated by this Agreement.

**I.    No Admission.**  The purpose of this Agreement is to resolve and settle the claims referenced herein, all of which are disputed, upon the terms and conditions set forth herein, and neither this Agreement nor any of the discussions leading up to the resolutions set forth herein shall constitute or evidence an admission as to any matter by any of the parties hereto.

**J.    Successors Bound.**  This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective representatives, heirs, successors and assigns.

**K.    Execution.**  This Agreement may be executed in any number of separate counterparts, all of which, when taken together, shall constitute one and the same instrument, admissible into evidence, notwithstanding the fact that all parties did not sign the same counterpart.  Delivery of an executed counterpart of this Agreement by facsimile shall be equally as effective as delivery of a manually executed counterpart hereof.    Any party delivering an executed counterpart of this Agreement by facsimile shall also deliver a manually executed counterpart hereof, but the failure to deliver a manually executed counterpart hereof shall not affect the validity, enforceability, and binding effect of this Agreement.

**L.    Reliance.**  The parties acknowledge to each other that each was advised or was represented by independent legal counsel of each party's own choice throughout all of the negotiations which preceded the execution of this Agreement and that each such party has executed this Agreement after being so advised or receiving such advice.  The parties acknowledge that each party has executed this Agreement without reliance upon any promise or representation of any person or persons acting for or on behalf of the other, except as expressly set forth in this Agreement.  Each party further acknowledges that such party and such party's counsel has had an adequate opportunity to make whatever investigation or inquiry it may deem necessary or desirable in connection with the subject matter of this Agreement prior to the execution hereof.

**M.    Integration.**  This Agreement supersedes all prior representations and agreements, if any, between the parties to this Agreement and their legal counsel relating to the subject matter hereof.  This Agreement, when executed, contains the entire and only understanding between the parties regarding the subject matter hereof.  It may not be altered, amended or extinguished, nor may any rights hereunder be waived, except by a writing which expressly refers to this Agreement and is signed subsequent to the execution of this Agreement by the parties to this Agreement.

**N.    Enforcement of Rights.**  The prevailing party (the "Prevailing Party") in any litigation, arbitration, bankruptcy proceeding, or other formal or informal resolution (collectively, a "Proceeding") of any claims brought by any party to this Agreement against any other party to this Agreement based upon, arising from, or in any way related to this Agreement or the transactions contemplated herein, including without limitation contract claims and all other common law or statutory claims (collectively, the "Claims"), shall be entitled to recover from such other party all its fees and costs incurred in connection with the Proceeding, including without limitation all its attorneys' fees and costs, all its expert witness and/or consultant's fees and costs, all its paralegal fees and costs, and all its other costs and expenses, regardless of whether such costs are otherwise statutorily recoverable (collectively, the "Fees and Costs").

**O.    Controlling Law.**  This Agreement shall be governed by, and construed in accordance with, the laws of the State of Nevada and Federal bankruptcy laws, without regard to principles of conflicts of law.

**P.    Construction.**  This Agreement shall be construed as though drafted by all of the parties hereto and shall not be construed against or in favor of any one party.  On the contrary, this Agreement has been reviewed by all parties hereto and their counsel, and shall be construed and interpreted according to the ordinary meaning of the words used so as to fairly accomplish the purposes and intentions of the parties hereto.

**Q.    Bankruptcy Court Approval.**  This Agreement and the parties' rights and obligations hereunder are subject to the Bankruptcy Court's approval of the settlements contemplated herein pursuant to the provisions of FRCP 9019 after notice to all creditors of the Cetus estate and a hearing.  Additionally, the parties agree that they will fully support the settlement contemplated by this Agreement at the hearing on the motion to approve the compromise.  Within ten

/ / /

/ / /

/ / /

(10) business days following the full execution of this Agreement, counsel for
Clark shall file a motion with the Bankruptcy Court to approve this Agreement.

Dated this ~~24~~ 28 day of ~~December~~ January, ~~2010~~ 2011

_____
Angelique L.M. Clark
Trustee of the Cetus Bankruptcy Estate

Dated this 14 day of December, 2010

_____
John L. Simmons
Trustee of the John L. Simmons Family
Trust

Approved as to form:

_____
John F. Murtha, Esq.
Attorney for Angelique L.M. Clark

Approved as to form:

_____
Allen J. Wilt, Esq.
Attorney for John L. Simmons,
Trustee